UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHAKURA SLAUGHTER,

    **Plaintiff,**

v.

RMLS HOP OHIO, L.L.C.,

    **Defendant.**

Case No. 2:19-cv-3812
**JUDGE EDMUND A. SARGUS, JR.**
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

The matter before the Court is Plaintiff Shakura Slaughter's ("Plaintiff") Motion for Conditional Certification, Opt-In Identification Discovery, and Court Supervised Notice to Potential Opt-In Plaintiffs (ECF No. 21). Defendant RMLS Hop Ohio, L.L.C. ("Defendant") has responded and Plaintiff has replied (ECF Nos. 22, 25). Thus, the motion is ripe for review. For the reasons stated herein, the Motion (ECF No. 21) is **GRANTED**.

### I.

Defendant is a corporate entity that owns and operates IHOP restaurants in Ohio. (Compl. ¶ 8, 20, ECF No. 1; Lujan Decl. ¶ 3, ECF No. 22-2; Def.'s Answer ¶ 8, ECF No. 7.) Defendant employed Plaintiff as a server from March 2018 to July 2018 at an IHOP restaurant in Hilliard, Ohio and from March 2018 to March 2019 at an IHOP restaurant in Reynoldsburg, Ohio. (*Id.* ¶ 10; Lujan Decl. ¶ 4, 6, 8; Slaughter Decl. ¶¶ 2–4, ECF No. 21-4; Def.'s Answer ¶ 10.)

Defendant classified and compensated Plaintiff as an hourly tipped employee. (*Id.* ¶ 39; Slaughter Decl. ¶ 5.) Defendant paid Plaintiff less than the statutory minimum hourly wage by taking a tip credit. (*Id.*; Slaughter Decl. ¶ 7.) Defendant used the tips Plaintiff received from customers to cover the full minimum wage. (*Id.*; Slaughter Decl. ¶ 7.) Plaintiff alleges she was

paid the same "sub-minimum server wage regardless of the job duties [she was] required to perform." (Slaughter Decl. ¶ 10.) Plaintiff understands that other servers working at the IHOP locations where she worked were paid the same way. (*Id.*)

Plaintiff and other servers frequently performed non-tipped duties unrelated to their tipped occupation. These duties included:

> Washing trays; [sic] washing dishes; stocking ice; washing appliances; stocking and arranging the salad case (including retrieving materials from freezers, prepping the salad, weighing and apportioning salad, portioning dressings, and portioning toppings); [sic] working the grill line and performing the primary job duties of cook; operating the dish tank and performing the primary job duties of a dishwasher; breaking down and cleaning the server line; scrubbing and cleaning storage shelves in the kitchen; cleaning and scrubbing coffee makers, equipment and pots; preparing delivery orders for Uber Eats, Door Dash, and Grub Hub; packaging and bagging condiments; preparing takeout orders and online orders from the IHOP website and mobile application; cutting lemons and limes; [sic] and other workplace maintenance tasks.

(Compl. ¶ 41; Slaughter Decl. ¶ 11.) Plaintiff contends Defendant was prohibited from taking a tip credit against its minimum wage obligations when servers performed this non-tipped work that was unrelated to their tipped occupation. (*Id.* ¶ 43.)

Defendant also required Plaintiff and its other servers to perform non-tipped duties that were related to their tipped occupation. These duties included:

> Cleaning booths; stocking stations throughout the restaurant and the serving line; preparing specialty drinks such as lemonades, "Splashberrys," ice coffee, and tea; filling salt, pepper, sugar, cream, condiment, and napkin containers; rolling bins full of silverware, dozens or hundreds at a time; preparing salads; preparing deserts, ice creams[,] and milkshakes; taking out trash; and sweeping, mopping, and vacuuming.

(*Id.* ¶ 45; Slaughter Decl. ¶ 12.) Servers performed this work for greater than 20% of the time they worked during a work week. (*Id.*; Slaughter Decl. ¶ 13.) Plaintiff contends Defendant was prohibited from taking a tip credit against its minimum wage obligations for this non-tipped work, because the non-tipped work exceeded 20% of the time the servers worked. (*Id.* ¶ 44.)

2

Plaintiff commenced this action against Defendant on September 3, 2019.[1] The Complaint alleges Defendant violated: (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207(a)(1); (2) the Ohio Constitution, Article II, Section 34a; and (3) Ohio Revised Code § 4111.03.

Plaintiff now seeks conditional certification of the following FLSA class:

> All present and former tipped server employees and other employees with similar job titles and/or positions of RMLS-HOP Ohio, L.L.C. at Defendant's Hilliard, Ohio and Reynoldsburg, Ohio locations during the period of three years preceding the commencement of this action [September 3, 2016] to the present.

(Mot. Conditional Certification at i, ECF No. 21, hereinafter "Mot. Cond. Cert.")

**II.**

"The FLSA 'was enacted by Congress to be a broadly remedial and humanitarian statute,' and in interpreting the FLSA the Supreme Court has long noted that the statute attempted to mitigate the effects of the 'unequal bargaining power . . . between employer and employee.'" *Myers v. Marietta Mem'l. Hosp.*, 201 F. Supp. 3d 884, 889 (S.D. Ohio 2016) (citing *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 143 (6th Cir. 1977); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)). "Due to the 'remedial nature of this statute,' the employee's burden 'of proving that he performed work for which he was not properly compensated' should not be made 'an impossible hurdle for the employee.'" *Id.* (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), *superseded by statute on other grounds as recognized in Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 31–32 (2014)). The FLSA requires employers to pay their employees "at a rate not less than one and one-half times the regular rate" for work exceeding forty hours per week. 29 U.S.C. § 207(a)(1).

---

[1] The Complaint also named as a defendant Romulus Holdings, LLC. (*See* Compl.) On October 28, 2019, Romulus Holdings, LLC, moved to dismiss the case against it and for an award of attorney's fees. (ECF No. 8.) Plaintiff did not oppose dismissal but opposed attorney's fees. (ECF No. 9.) The Court granted the motion to dismiss in part, terminating Romulus Holdings, LLC as a party, and denied in part, declining to award attorney's fees. (ECF No. 13.)

3

The FLSA provides that a court may certify a collective action brought "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). There are "two requirements for a representative action: 1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Hughes v. Gulf Interstate Field Servs.*, No. 2:14-cv-432, 2015 U.S. Dist. LEXIS 88205, at *6 (S.D. Ohio July 7, 2015) (citing *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006)).

Similarly situated employees are permitted to opt-in to the collective action. *Myers*, 201 F. Supp. 3d at 889–90 (citing *Comer*, 454 F.3d at 546). The lead plaintiff bears the burden of showing that the proposed class members are similarly situated to the lead plaintiff. *Id.* at 890 (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), abrogated on other grounds by *Campbell–Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016)). The FLSA does not define "similarly situated" and neither has the Sixth Circuit. *Id.* "[N]otably, plaintiffs seeking to certify a collective action under the FLSA face a lower burden than plaintiffs seeking class certification under Federal Rule of Civil Procedure 23." *Id.* "District courts conduct a two-phase inquiry to determine whether plaintiffs are similarly situated: conditional and final certification." *Id.* (citing *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012)).

"In the first phase, the conditional-certification phase, conducted at the beginning of the discovery process, named plaintiffs need only make a 'modest factual showing' that they are similarly situated to proposed class members." *Id.* (citing *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 764 (N.D. Ohio 2015); *Comer*, 454 F.3d at 547). The standard at the first step is "fairly lenient . . . and typically results in 'conditional certification' of a representative class." *Id.*

4

(citing *Comer*, 454 F.3d at 547); *Hughes*, 2015 U.S. Dist. LEXIS 88205 at *7.  As this Court recently explained in *Myers v. Marietta Memorial Hospital*:

> Plaintiffs are similarly situated "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs."  Showing a "unified policy" of violations is not required.  The named plaintiff "need only show that [her] position is similar, not identical, to the positions held by the putative class members."

201 F. Supp. 3d at 890 (citing *O'Brien*, 575 F.3d at 584–5; *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867–68 (S.D. Ohio 2011) (alteration omitted)).

"If conditional certification is granted, 'plaintiffs are permitted to solicit opt-in notices, under court supervision, from current and former employees.'"  *Id*. (citing *Cornell v. World Wide Bus. Servs. Corp*., No. 2:14-CV-27, 2015 U.S. Dist. LEXIS 148191, at *1 (S.D. Ohio Nov. 2, 2015)).  Determining whether to allow an action to proceed as a collective action is left to the trial court's discretion.  *Comer*, 454 F.3d at 546.  Because the statute of limitations on an FLSA claim continues to run until written consent is filed with the trial court, it is important that notice of the collective action be given to all potential opt-in plaintiffs as soon as practicable so they can decide whether to participate in the lawsuit.  *Lewis v. Huntington Nat'l Ban*k, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011).

After notice has been sent and discovery has been completed, a defendant can move to decertify the class, challenging a court's preliminary determination that other employees are similarly situated.  *Meyers*, 201 F. Supp. 3d at 890.  At this second stage, "courts 'examine more closely the question of whether particular members of the class are, in fact, similarly situated.'" *Id*. (citing *Comer*, 454 F.3d at 547).  "If [a court] concludes that they are similarly situated, the collective action proceeds to trial; if not, the court de-certifies the class, dismisses the opt-in plaintiffs without prejudice, and proceeds to trial on the named plaintiff[(s)]' individual claims."

*Sisson v. OhioHealth Corp.*, 2:13-CV-0517, 2013 US. Dist. LEXIS 162464, at *6 (S.D. Ohio Nov. 14, 2013) (citing *Smith v. Lowe's Home Ctrs.,* 236 F.R.D. 354, 357 (S.D. Ohio 2006)).

### III.

Plaintiff moves for conditional certification of the following class:

> All present and former tipped server employees and other employees with similar job titles and/or positions of RMLS-HOP Ohio, L.L.C. at Defendant's Hilliard, Ohio and Reynoldsburg, Ohio locations during the period of three years preceding the commencement of this action [September 3, 2016] to the present.

(Mot. Cond. Cert. at i.) Defendant opposes certification arguing that Plaintiff is not similarly situated to putative class members and notice should not be sent. (*See* Def.'s Resp., ECF No. 22.)

### A. Similarly Situated

"To obtain conditional certification, [a p]laintiff need only make a modest factual showing that [she is] similarly situated to the putative class members." *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 896 (S.D. Ohio 2018). A plaintiff can meet this burden by demonstrating that she and the other putative class members "'suffer from a single, FLSA-violating policy' or [that] their claims are 'unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" *Ford v. Carnegie Mgmt. Servs., Inc.*, No. 2:16-cv-18, 2016 U.S. Dist. LEXIS 62276, at *5 (S.D. Ohio May 11, 2016) (quoting *O'Brien*, 575 F.3d at 585).

Plaintiff submits that:

> [c]onditional certification is appropriate in this case because the following two policies, each being willful and systematic violations of the FLSA, were uniformly applied by Defendants to all tipped servers at the Hilliard and Reynoldsburg IHOP locations, including [Plaintiff]; Defendant's utilization of the tip credit provisions of the FLSA and Ohio law for Plaintiff and other servers when these employees (a) performed related but non-tipped work exceeding twenty percent of their weekly time worked, and/or (b) performed non-related, non-tipped work during the work week, at any time, violated the FLSA, 29 U.S.C. §§ 203(m), 206; 29 CFR § 531.56, and Ohio law.

6

(Pl.'s Mot. Cond. Cert. at 4.)

Plaintiff begins with an explanation of her unified theory of Defendant's FLSA violations. Plaintiff contends that the FLSA incorporates state minimum wage laws when they include a higher minimum wage than the FLSA. (*Id.* at 11 (citing 29 U.S.C. § 206).) Thus, Plaintiff argues, Ohio's minimum wage tip credit law applies to Defendant, which states that an employer may pay "less than, but not less than half, the minimum wage rate required . . . if the employer is able to demonstrate that the employee receives tips that combined with the wages paid by the employer are equal to or greater than the minimum wage rate for all hours worked." (*Id.* (citing OHIO CONST. art. II, § 34a).)

In order to determine when tip credit may be taken for employees who perform both tipped and non-tipped work, Plaintiff relies on the "dual jobs" regulation. (*Id.* at 12 (citing 29 C.F.R. §§ 531.56(e)).) The dual jobs regulation explains that when an employee "is employed in a dual job, as for example where a maintenance man in a hotel also serves as a waiter," the employer may take tip credit only when the employee is working as a waiter. (*Id.* (citing 29 C.F.R. §§ 531.56(e)).) The regulation distinguishes the dual job from "a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee, and occasionally washing dishes or glasses." (*Id.* (citing 29 C.F.R. §§ 531.56(e)).) In this instance, the employer may take tip credit for the waiter's wage for all "[s]uch related duties." (*Id.* (citing 29 C.F.R. §§ 531.56(e)).)

Plaintiff contends that the Department of Labor "DOL" has provided interpretive rules in its Field Operations Handbook ("FOH") interpreting the dual jobs regulation. (*Id.*) For example, the DOL's 80/20 interpretive rule states that an employer may "take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties are not by themselves directed toward producing tips," unless "the tipped employees spends a substantial

7

amount of time (i.e., in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties." (*Id.* at 12–13 (citing FOH § 300d00(f) (2016)).) Additionally, the FOH provides that "an employer may not take tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation." (*Id.* at 13 (citing FOH § 300d00(f) (2016)).) Plaintiff contends that the dual jobs regulation and 80/20 interpretative rule have been recognized and used by courts in analyzing compliance with the FLSA. (*Id.* (citing cases for example *Harrison v. Rocknee's Inc.*, 274 F. Supp. 3d 706, 713 (N.D. Ohio 2017).)

Plaintiff acknowledges that in November of 2018 and February of 2019, the DOL modified the 80/20 interpretive rule which now states an employer "may take a tip credit for any amount of time that an employee spends on related, non-tipped duties performed contemporaneously with the tipped duties—or for a reasonable time immediately before or after performing the tipped duties—regardless of whether those duties involve direct customer service." (*Id.* at 13–14 (citing FOH § 30d00(f)(3)(a) (2019)).) To determine what "related non-tipped duties" are, the new rule directs employers to the Occupational Information Network ("O*NET") summary. (*Id.* (citing FOH § 30d00(f)(3)(a) (2019)).) In addition, the new DOL interpretive rule retains the guideline that employers cannot take tip credit when tipped employees perform work unrelated to their tipped occupation. (*Id.* (citing FOH § 30d00(f)(4) (2019)).) Plaintiff argues courts within the Sixth Circuit have reaffirmed the 80/20 interpretive rule despite the newer rule. (*Id.* (citing cases for example *Belt v. P.F. Chang's China Bistro, Inc.*, 401 F. Supp. 3d 512, 535–36 (N.D. Ohio 2019).)

Plaintiff contends the first basis for conditional certification is that Defendant "regularly and frequently required Plaintiff and other servers to perform non-tipped duties unrelated to their tipped occupations" and took tip credit from their wages for this work. (*Id.* at 16 (citing Slaughter Decl. ¶ 11).) Plaintiff asserts many of the unrelated tasks servers were required to perform are not

8

on the O*NET summary. (*Id.*) Thus, under either interpretative rule, Defendant was not entitled to take tip credit for this work. (*Id.*) Plaintiff argues Defendant violated the FLSA and Ohio law when it unlawfully took this tip credit against its minimum wage obligations. (*Id.*)

Plaintiff asserts as a second basis for conditional certification, Defendant "regularly required Plaintiff and other servers to perform non-tipped duties related to their tipped occupations." (*Id.* at 16–17 (citing Slaughter Decl. ¶¶ 12–13).) Plaintiff contends she and the other servers spent greater than 20% of their time worked during a workweek on non-tipped tasks. (*Id.*) (citing Slaughter Decl. ¶¶ 12–13).) Additionally, the non-tipped tasks were not performed contemporaneous with, or for a reasonable amount of time immediately before or after, their tipped work. (*Id.* at 16–17 (citing Slaughter Decl. ¶¶ 12–13).) Plaintiff argues, thus, whether or not the Court follows the new DOL guidance, Defendant violated the FLSA and Ohio law when it unlawfully took this tip credit against its minimum wage obligations. (*Id.*)

Finally, Plaintiff, in her declaration, contends she is similarly situated to the putative class. Plaintiff states:

> 6. As a result of my employment with RMLS-HOP, I have personal knowledge about the company's pay and timekeeping practices and server duties and tasks during the workday at the RMLS-HOP locations in Ohio that I worked at.
>
> 9. During my employment at RMLS-HOP as a server, I was paid sub-minimum server wage during all or most workweeks. I understand that other servers were also paid a sub-minimum server wage.
>
> 11. Myself and other servers regularly performed required duties where we did not interact with customers and did not earn tips.
>
> 13. I would perform the tasks [untipped and related to my work] in excess of 20% of my time worked each workweek during the employment. . . . Other servers I worked with also spent more than 20% of their time performing non-tipped duties.
>
> 14. Other servers and I [were] not given the opportunity to clock in with a different job code when performing tasks other than waiting on tables so that we [could] receive the full minimum wage.

9

> 17. I understand that the pay practices discussed above were company-wide and applied to myself and RMLS-Hop's other servers at the locations I worked at. I know this because we worked under the same terms, I spoke to them about the way we were paid, I spoke to them about our duties as servers, I worked alongside them, and I observed them while they completed their duties.
>
> 18. I personally observed other RMLS-HOP servers performing non-tipped duties including those listed in paragraph 11 and 12 above that were far greater than 20% of their overall time spent working as servers.

(*Id.* at 18 (citing Slaughter Decl. ¶¶ 6, 9, 11, 13–14, 17–18).)

Defendant, in response, argues (1) while this Court should rely on the 2019 DOL interpretive rule, it did not violate the FLSA under either DOL interpretive rule; and (2) Plaintiff is not similarly situated to the other servers. (*See* Def.'s Resp.)

Defendant agrees that how it paid Plaintiff should be evaluated under the dual jobs regulation and accompanying DOL interpretive rules. (*Id.* at 18.) Defendant contends, however, that the Court should also take into account the DOL's recently issued Notice of Proposed Rulemaking, which would revise the dual jobs regulation to include the same language as the newest DOL interpretive rule. (*Id.* at 8–9 (citing 84 Fed. Reg. 195 (Oct. 8, 2019).) Specifically, the regulation would be amended to include the language "[a]n employer may take a tip credit for any amount of time that an employee performs related, non-tipped duties contemporaneously with his or her tipped duties, or for a reasonable time immediately before or after performing tipped duties." (*Id.* at 10 (citing 84 Fed. Reg. 195 (Oct. 8, 2019).)

Defendant contends that the duties which Plaintiff identifies as "unrelated" are consistent with the O*NET summary of related tasks. (*Id.* at 11 (citing FOH § 00d00(f) (2019).)  Thus, Defendant argues, under the new DOL interpretive rule, which relies on the O*NET summary, it did not violate the FLSA by taking tip-credit for work on unrelated duties because all the duties Plaintiff performed were related to her tipped occupation. (*Id.*) Further, Defendant contends, even

10

under the older DOL rule, the tasks Plaintiff lists as unrelated are those regularly performed by servers, and thus they are related to servers' tipped occupations. (*Id.*) Under either rule, Defendant argues, it did not violate the FLSA by taking a tip credit for non-tipped work unrelated to tipped work. (*Id.* at 11–12.)

Defendant also contends that while its employees did perform related non-tipped duties, which it refers to as "side-work," they performed these duties for less than 15% of their time. (*Id.* at 12–13.) Defendant argues this is proven by the fact that its clock-out computer had a pop-up screen asking employees to report to their manager if they spent more than 15% of their shift doing side-work so they could be compensated correctly. (*Id.*) Defendant contends this also proves side work was performed contemporaneously with, or for a reasonable amount of time immediately before or after, their tipped duties. (*Id.*) Thus, Defendant argues, under either DOL rule, it did not violate the FLSA by incorrectly compensating servers for non-tipped work related to their tipped occupation. (*Id.* at 13.)

In addition to arguing it complied with the FLSA, Defendant, relying on *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 868 (S.D. Ohio 2005), contends Plaintiff is not similarly situated to the putative collective action members. Defendant states:

> Here, like in *Harrison*, RMLS-Hop Ohio has provided evidence, including a [d]eclaration of its Director of Human Resources Administration, [d]eclarations of servers who were co-workers of [Plaintiff], and documents establishing that RMLS-Hop Ohio has a computerized system in place that requires servers to notify management or human resources if they performed side work in excess of 15% of their time working every time they clock out. . . . [Plaintiff], unlike other servers, alleges she did not see and was not aware of the instruction that popped up every time she clocked out notifying her that she was required to report to management or human resources if she spent more than 15% of her time on side work.

(Def.'s Resp. at 15.)

11

In response to Defendant's arguments, Plaintiff argues that Defendant's opposition asks the Court to evaluate her credibility and resolve factual disputes, both of which are inappropriate on a motion for conditional certification. (Pl.'s Reply at 1–2 (citing *see Casarez v. Producers Serv. Corp.*, No. 2:17-cv-1086, 2018 U.S. Dist. LEXIS 88370, at *15–16 (S.D. Ohio May 25, 2018).) Plaintiff contends that Defendant's opposition requires the Court to decide that the pop-up window insulates Defendant from liability and/ or that Plaintiff is not credible, and she must have failed to report to management upon seeing the pop-up window. (*Id.* at 2.) Plaintiff argues these determinations are inappropriate at this stage in the case. (*Id.*) Plaintiff also argues the Court should disregard the declarations submitted by Defendant from three of its current servers. (Pl.'s Reply at 9 (citing *Myer*, 201 F. Supp. 3d at 888)).

The Court agrees with Plaintiff; based on the facts highlighted in Plaintiff's Motion and Reply, the Court finds that Plaintiff has sufficiently demonstrated that she is similarly situated to the putative class.

Defendant spends considerable time in its responsive brief alleging that it complied with the FLSA, stating "RMLS-HOP Ohio's compliance is not even a close question." (*See* Def.'s Resp. at 7–14.) Defendant's merits' arguments, however, are not persuasive. The Court takes no position on the merits of the case at this time, because a position on the merits does not inform the conditional certification question. *See Hughes*, 2015 U.S. Dist. LEXIS 88205 at *12 (The "determination of whether [the] [p]laintiffs and others similarly situated qualify as exempt employees under the FLSA is a merits determination that will be considered at the second phase of certification, not at this initial conditional inquiry."); *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1042 (S.D. Ohio 2018) ("During the conditional certification phase, a court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility.");

*Colley v. Scherzinger Corp.*, 176 F. Supp. 3d 730, 733–34 (S.D. Ohio 2016) ("[A]t the conditional certification stage, the Court does not consider the merits of the claims, resolve factual disputes, or decide substantive issues."); *Jungkunz v. Schaeffer's Inv. Res., Inc.*, No. 1:11-cv-691, 2014 U.S. Dist. LEXIS 43490, at *21 (S.D. Ohio Mar. 31, 2014) ("[T]he court's analysis is confined to evaluating whether the proposed class is similarly situated and does not touch upon the merits of [the] plaintiff's claims."  (internal citations omitted)).

Additionally, both parties spend considerable time arguing whether they believe the Court should apply the DOL's newest guidance interpreting the dual jobs regulation.  This is not a determination the Court needs to make at this time.  Plaintiff has sufficiently alleged that the putative class members are unified by common theories of Defendant's statutory violations whether or not the Court gives deference to the newest DOL interpretative rule.

In addition to arguing its case on the merits, Defendant argues that Plaintiff is not similarly situated to the putative class because Defendant uses a computer system which instructed Plaintiff to notify management or human resources if she spent more than 15% of her time on side work.  In support, Defendant submitted a declaration from Denyse Lujan, director of human resources, explaining the system.  (*See* Lujan Decl., ECF No. 22.)  In addition, Defendant submitted three declarations from servers.  (*See* Def.'s Resp. at Exs. B, C, D.)  The servers' declarations are identical except their names and the dates they began working for Defendant.  (*Id.*)  The declarations state the computer does have a pop-up window instructing them to notify management if they spend more than 15% of their time on side work and they have never spent more than 15% of their time on side work and instead spend most of their time serving guests.  (*See id.*)

The Court agrees with Plaintiff that to consider the three employees' declarations would be a premature examination of the merits of the claims in this case.  This Court, in *Myers*, stated:

13

> At this early stage of litigation, Plaintiffs have not had an opportunity to depose the employees who submitted affidavits on Defendants' behalf.  And a balancing of Plaintiffs' and Defendants' completing affidavits would require credibility and factual determinations and is thus improper at this time.  Moreover, form affidavits "gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of potential for coercion."

*Myers*, 201 F. Supp. 3d at 891–92 (citing *Amador v. Morgan Stanley & Co.*, No. 11-cv-4326, 2013 U.S. Dist. LEXIS 19102, at *4 (S.D.N.Y. Feb. 7, 2013)); *see also Harsh v. Kaliha Mfg.*, No. 3:18-cv-2239, 2019 U.S. Dist. LEXIS 179932, at *6–7 (N.D. Ohio Oct. 17, 2019) ("Courts in this circuit have consistently rejected the notion that these 'happy camper' affidavits [which make statements that employees are not interested in litigation because they are being paid lawfully] are enough to defeat conditional certification."); *Abner v. Convergys Corp.*, No. 1:18-cv-42, 2019 U.S. Dist. LEXIS 62597, at *15 (S.D. Ohio Apr. 11, 2019) (The defendant "relied on 'happy camper' affidavits to suggest that 'there is not evidence the class members were victims of a common policy or unified theory' . . . [h]owever, the district courts regularly reject 'happy camper' defenses at the conditional certification stage."); *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011) ("[T[his Court is not swayed by [the defendant's] submission of thirty-five 'happy camper' affidavits . . . all using substantially the same language, each stating that the employee never had an issue with [the alleged violations.]").  Thus, the Court declines to consider the form declarations Defendant submitted at this time.

Similarly, as to Ms. Lujan's declaration, if the Court were to use the declaration to determine that Plaintiff failed to follow the instructions on the computer system, or that the computer system relieves Defendant of liability, the Court would be making factual, credibility, and merits determinations.  Defendant's argument that the declarations show Plaintiff is not similarly situated to the putative class, thus, is unpersuasive.

14

Additionally, Defendant's argument that this case is like *Harrison* is not persuasive. *Harrison* differs from this case in many important respects. In *Harrison*, a McDonald's employee claimed that a manager was manually altering time records in order to avoid paying all that is required by the FLSA. 411 F. Supp. 2d at 864. In support, the plaintiff submitted her own affidavit as well as a co-employee's affidavit and the defendant submitted a store manager's affidavit. *Id.* at 865, 869. Importantly, the parties had done some discovery prior to the motion and the court noted that "[d]uring discovery, [the defendant] produced over 4,000 pages of timekeeping records." *Id.* at 870. The court examined the parties' affidavits, striking parts of the affidavits the plaintiff had offered, and concluded "[i]n short, [the] [p]laintiff has offered nothing but speculation to support her belief that other McDonalds's employees were not paid all of the money to which they were entitled." *Id.* at 871. The Court denied the motion for conditional certification. *Id.* at 872.

In contrast to *Harrison*, in this case the parties have not yet had the benefit of discovery. Further, Defendant has not challenged the admissibility of Plaintiff's declaration, and even if it had, most courts in the Sixth Circuit now hold that the "plaintiff's evidence on a motion for conditional certification [need] not meet the same evidentiary standards applicable to motions for summary judgment because to require more at this stage would defeat the purpose of the two-stage analysis under [FLSA] Section 216(b)." *Ford v. Carnegie Mgmt. Sevrs.*, No. 2:16-cv-18, 2016 U.S. Dist. LEXIS 62276, at *8 (S.D. Ohio May 11, 2016) (citing *Waggoner v. U.S. Bancorp.*, 110 F. Supp. 3d 759, 770 n.6 (N.D. Ohio 2015)). Further, the Plaintiff in *Harrison* relied on pure speculation, admitting that she personally never observed the allegedly illegal conduct. 411 F. Supp. 2d at 870. Here, Plaintiff alleges that she personally observed the unlawful pay practices being applied to her and the other employees. (Slaughter Decl. ¶ 6, 17.)

15

The Court finds that Plaintiff has offered sufficient evidence to support the conclusion that she is similarly situated to the putative class.

### B. Notice

"If the Court determines that the potential plaintiffs are similarly situated, the court must then determine that the proposed notice is timely, accurate, and informative as to properly notify the proposed class." *Brittmon*, 285 F. Supp. 3d at 1043 (internal citations omitted); *see also Myers* 201 F. Supp. 3d at 890; *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 166 (1989) (noting notice must be "timely, accurate, and informative"). The United States Supreme Court determined that notice should be sent in the early stages of litigation, noting the "wisdom and necessity" of early court involvement in managing opt-in cases and facilitating notice. *Hoffmann-La Roche Inc.*, 493 U.S. at 171.

Plaintiff requests that the Court approve his proposed opt-in notice and procedure and has attached a proposed Notice of Collective Action Wage Lawsuit to be sent by mail and a Proposed Email to Putative Collection Action Members. (*See generally* ECF Nos. 21-1, 21-2.) Plaintiff requests notice be sent to all of Defendant's hourly tipped servers in the two IHOP restaurants where Plaintiff worked for the last three years. (Pl.'s Mot. Cond. Cert. at 19–20.) Plaintiff also requests the opt-in period remain open for sixty days. (*Id.*)

Defendant, in response, contends the following: (1) no notice should be allowed because it is mere speculation whether employees other than Plaintiff performed non-tipped work in excess of 20% of their time working; (2) the statute of limitations should run from the date the notice is sent, not the date the case was filed; (3) the notice should be sent to those who worked for Defendant within a two-year period, not a three-year period; (4) the notice to be mailed should

16

include language that informs potential opt-in plaintiffs of possible fees; and (5) the notice to be emailed should exclude the language "recently authorized by the Court." (Def.'s Resp. at 16–19.)

In Plaintiff's reply she agrees to cede to two of Defendant's requests. (Pl.'s Reply at 11, ECF No. 25.) Plaintiff agrees to use a statute of limitations that runs from the date the notice is sent and to exclude the language "recently authorized by the Court" in the email notice. (*Id.*) Thus, the Court need not address either of these undisputed points.

Defendant's other three arguments are not well-taken. First, Defendant is incorrect that Plaintiff has "mere speculation" as to whether other employees performed non-tipped work in excess of 20% of their time. Plaintiff asserts that she spoke to other employees about the way they were paid, she spoke to them about their duties as servers, she worked alongside them, and she observed them while they completed their duties. (Slaughter Decl. ¶ 17.) At this time, Plaintiff's declaration is sufficient evidence. *Sisson*, 2013 U.S. Dist. LEXIS 162464 at *20 (finding the plaintiff provided "enough of a factual basis to support conditional certification" despite the fact that he did "not identif[y] any proposed plaintiffs by name or submit affidavits from any potential plaintiffs"); *Rembert v. A Plus Home Health Care Agency LLC*, No. 2:17-cv-287, 2018 U.S. Dist. LEXIS 72816, at *4 (S.D. Ohio May 1, 2018) ("A court can conditionally certify . . . on the strength of single affidavit or declaration if that document sets forth sufficient facts from which the court may reasonably infer the existence of other employees who were subject to the same wage and hour policy as [the] plaintiff."). Thus, the Court will allow Plaintiff to send notice.

Defendant's argument regarding the statute of limitations is also unpersuasive. Plaintiff is correct that this Court has used a three-year statute of limitations in the past, because a determination of whether FLSA violations are willful is better suited for a later stage of litigation. *Smith v. Generations Healthcare Servs. LLC*, No. 2:16-cv-807, 2017 U.S. Dist. LEXIS 106583, at

\*16–17 (S.D. Ohio July 11, 2017) (citing *Stanley v. Turner Oil & Gas Props., Inc.*, No. 2:16-cv-386, 2017 U.S. Dist. LEXIS 5434, at \*26–27 (S.D. Ohio Jan. 13, 2017) (using a three-year limitations period for willful violations at the notice stage); *Colley*, 176 F. Supp. 3d at 735 (finding the absence of willful conduct not established by the pleadings at the notice stage and using a three-year limitations period.)). Thus, the Court approves Plaintiff's notices being sent out with a three-year statute of limitations.

Finally, the parties disagree as to whether inclusion of language regarding potential opt-in plaintiff's fees and costs is appropriate. Defendant states the current notice is incomplete because it "fails to notify [potential opt-in plaintiffs] that if they lose, they could be partially responsible for Defendant's costs." (Def.'s Resp. at 19.) In addition, Defendant contends, "[a]ny server who elects to opt-in should be made aware that they could be liable for the cost of their deposition and other taxable costs." (*Id.*)

Plaintiff opposes this language contending that district courts in the Sixth Circuit's "recent decisions have found that such language may improperly dissuade putative class members from opting into a wage case." (Pl.'s Reply at 12.) The Court agrees. Language informing potential putative class members of fees and costs could unfairly dissuade participation. *See Hall*, 299 F. Supp. 3d at 898 ("Plaintiffs contend that the inclusion of [language informing potential class of potential liability for attorneys' fees and costs] is inappropriate and could unfairly dissuade potential class members from participating in the action. The Court agrees."); *Ruby v. Elec. Co.*, No. 1:18-cv-006, 2018 U.S. Dist. LEXIS 217569, at \*7 (N.D. Ohio Nov. 27, 2018) ("The notice shall not include any reference to potential costs that may be assessed to opt-in plaintiffs."); *Kim v. Detroit Med. Informatics, LLC*, No. 19-11185, 2019 U.S. Dist. LEXIS 204014, at \*13 (E.D. Mich. Nov. 25, 2019) (The Court [] finds Defendant's proposed warning in the notice concerning

potential fees unnecessary and, in fact, improper . . . [because] it may deter an employee from participating, and that adverse effect is disproportionate to the burden they may face by joining the action."); *Abner*, 2019 U.S. Dist. LEXIS 62597 at *19 (rejecting the defendant's proposed language that putative class members could be liable for costs and expenses); *Perry v. Krieger Beard Servs.,* LLC, No. 3:17-cv-161, 2018 U.S. Dist. LEXIS 109765, at *15–16 (S.D. Ohio July 2, 2018) (denying the defendant's request for language informing potential opt-in plaintiff's they may be liable for the defendant's costs "because it could 'improperly dissuade potential collective action members from opting into this lawsuit'") (citing *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2017 U.S. Dist. LEXIS 129955, at *31 (S.D. Ohio Aug. 14, 2017)). Thus, language regarding potential fees should not be included in Plaintiff's notices.

### IV.

For the reasons stated above, Plaintiff's Motion for Conditional Certification, Opt-In Identification Discovery, and Court Supervised Notice to Potential Opt-In Plaintiffs (ECF No. 21) is **GRANTED.**

    **IT IS SO ORDERED.**

4/21/2020                                           s/Edmund A. Sargus, Jr.
**DATE**                                      **EDMUND A. SARGUS, JR./
UNITED STATES DISTRICT JUDGE**