UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHAKURA SLAUGHTER, | ) | CASE NO. 2:19-cv-03812 |
| | ) | |
| Plaintiff, | ) | JUDGE EDMUND A. SARGUS, JR. |
| | ) | |
| *v.* | ) | MAGISTRATE JUDGE |
| | ) | KIMBERLY A. JOLSON |
| RMLS-HOP OHIO., L.L.C., *et al.,* | ) | |
| | ) | **JOINT MOTION FOR** |
| Defendants. | ) | **APPROVAL OF SETTLEMENT** |

The parties respectfully and jointly move the Court to approve the proposed Settlement reached by the parties and memorialized in the *Joint Stipulation of Settlement and Release* ("Settlement") submitted separately pursuant to the Court's October 26, 2022 Order.[1] The Settlement seeks to resolve all individual and collective wage-and-hour claims that were or could have been brought in this Action.

If approved by the Court, the Settlement will provide settlement payments to the Named Plaintiff and Opt-Ins representing a substantial percentage of the potential value of their claims. The parties respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and satisfies the criteria for approval under § 216(b) of the FLSA.

The following settlement documents are respectfully submitted for approval or entry by the Court:

| | |
|---|---|
| Exhibit 1: | *Joint Stipulation of Settlement and Release*; |
| Exhibit 2: | Proposed Final Order and Judgment Approving Settlement and Dismissing Action; |
| Exhibit 3: | Exhibit A to *Joint Stipulation of Settlement and Release* – |

---

[1] The parties understand, as the Court stated in its October 26, 2022 Order, that if the Court approves the Settlement, the Court intends not to keep the settlement under seal.

Individual Payments Allocation Schedule;

Exhibit 4:     Declaration of Plaintiffs' Counsel;

Exhibit 5:     Records of Plaintiffs' Counsel's Lodestar Hours Spreadsheet (as of July 25, 2022); and

Exhibit 6:     Records of Plaintiffs' Counsel's Costs Spreadsheet.

The below Memorandum in Support explains the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

Respectfully submitted,

s/ Ryan A. Winters                                          /s David A. Selden      (via email consent)
Joseph F. Scott (0029780) (Trial Attorney)     **MESSNER REEVES, LLP**
Ryan A. Winters (0086917)                           7250 N. 16th Street, Ste. 410
**SCOTT & WINTERS LAW FIRM, LLC**              Phoenix, Arizona 85020
P: (216) 912-2221    F: (440) 846-1625         (602) 635-4003 (direct)
50 Public Square, Suite 1900                      dselden@messner.com
Cleveland, OH 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com                  Patrick Kasson (0055570) (Trial Counsel)
                                                            **REMINGER CO., L.P.A.**
Kevin M. McDermott II (0090455)              200 Civic Center Drive, Suite 800
**SCOTT & WINTERS LAW FIRM, LLC**              Columbus, OH 43215
P: (216) 912-2221    F: (440) 846-1625         P: 614-228-1311
11925 Pearl Rd., Suite 310                        pkasson@reminger.com
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com              *Counsel for Defendant RMLS-HOP Ohio, L.L.C.*

*Attorneys for Plaintiffs*

ii

<u>**MEMORANDUM IN SUPPORT**</u>

**I.** **THE LITIGATION**

**A. The Claims and Issues**

Named Plaintiff Shakura Slaughter filed this Action in the United States District Court for the Southern District of Ohio, Eastern Division on September 3, 2019. (ECF #1.) Plaintiff's original Complaint alleged, among other things, that Defendants RMLS Hop Ohio, L.L.C. and Romulus Holdings LLC failed to pay her and other similarly situated tipped employees and other employees with similar job titles and/or positions of Defendants minimum wages and overtime compensation allegedly required to be paid under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA") and the wage laws of the State of Ohio, O.R.C. §§ 4111.01 et seq., Article II, Section 34a of the Ohio Constitution. (*Id*.)

Defendant RMLS-HOP OHIO, L.L.C. ("RMLS-HOP") is a franchise owner and operator of International House of Pancakes ("IHOP") restaurants in Ohio. (*See* ECF #11, Defs.' Answer to Am. Compl. ¶ 8.) Romulus Holdings LLC is a holding company that, according to Defendant, did not employ Plaintiff. (*See generally* ECF #8, Defs.' Mot. Dismiss.) Plaintiff Shakura Slaughter was employed by RMLS-HOP as a server at RMLS-HOP's Hilliard, Ohio IHOP location from about March 2018 to June 2018; Plaintiff also worked at RMLS-HOP's Reynoldsburg, Ohio IHOP location from about December 2018 to March 2019 as a server. RMLS-HOP paid Plaintiff and other servers less than the full minimum wage, and took a "tip credit" against its minimum wage obligations. Plaintiff alleged that Plaintiff and other servers performed non-tipped duties that exceeded twenty percent of the total time Plaintiff and other servers worked for Defendant each workweek, as well as performed various non-tipped tasks unrelated to their tipped occupations during their shifts. Plaintiff ultimately alleged that

Defendants' utilization of the tip credit provisions of the FLSA and Ohio law for Plaintiff and other servers when these employees (a) performed related but non-tipped work exceeding twenty percent of their weekly time worked for Defendant, and/or (b) performed non-related, non-tipped work during a workweek, at any time, violated the FLSA, 29 U.S.C. §§ 203(m), 206; 29 CFR § 531.56; and Ohio law.

Defendant categorically denied Plaintiff's claims, and the parties hotly disputed the strength of Plaintiff's case and Defendant's defenses. Defendant asserted that it has taken multiple steps over the many years predating Plaintiff's filing to ensure that it complies with the tip credit regulations. Only by way of example, every time Plaintiff and other tipped employees accessed the point-of-sale system to enter their times, enter the amount of their tips, and/or clock out at the end of every one of their shifts, the electronic system displayed a message requiring servers to confirm that they worked no more than 15% of their shift performing "side work." Defendant also posted in its restaurants a list of "Guest Readiness" tasks, or "side work," that servers may occasionally perform for a small part of their duties, and advised servers and related tipped employees that they were required to notify management or human resources if they ever spend more than 15% of their time performing side work during a shift. Defendant further asserts that the individualized analysis of the issues regarding alleged "side work," on a week-by-week, or hour-by-hour basis, would be required as to each potential class member and which would warrant decertification of this collective action as to both the Hilliard and Reynoldsburg IHOP locations.

Obtaining the alleged unpaid wages at trial would be no easy task. In particular, Plaintiffs would need to: (1) convince the Court that the FLSA claim should proceed to trial on a collective basis under 29 U.S.C. § 216(b) as to both the Hilliard and Reynoldsburg IHOP locations; (2)

prove that each Named and Opt-In collective action Plaintiff performed related but non-tipped work exceeding twenty percent of the their weekly time worked, and/or performed non-related, non-tipped work during the workweek, in addition to the amounts of these times, and defeat Defendant's argument that the amount of side work Plaintiffs allege they performed, both with regard to frequency and duration, is an exaggeration that cannot be supported with admissible evidence; and (3) defeat Defendant's legal argument that any alleged violation was not willful and/or made in good faith.

### B. Defendants' Motion to Dismiss

As noted above, this matter was deeply contested by Defendant. On October 28, 2019 Defendant Romulus Holdings LLC moved to dismiss itself as a Defendant pursuant to Fed. Rs. Civ. P. 12(b)(2), (3) and (6). (ECF #8.) Plaintiff promptly filed a First Amended Complaint (ECF #10), and simultaneously filed a response to Defendant's motion conceding, in part, to dismissal of the Romulus Holdings entity. (*See* ECF #9.) On December 16, 2019, the Court issued its Opinion and Order granting in part and denying in part Defendant Romulus Holdings' Motion to Dismiss. (ECF #13; 2019 U.S. Dist. LEXIS 215784.)

The First Amended Complaint narrowed Plaintiffs' claims to Defendant RMLS-HOP OHIO., L.L.C., as well as focused the allegations in the proceeding to the minimum wage provisions of the FLSA, 29 U.S.C. § 206, and O.R.C. §§ 4111.01 et seq., Article II, Section 34a of the Ohio Constitution. (*See* ECF #10.) Defendant RMLS-HOP filed an Answer to Plaintiff's First Amended Complaint, denying all liability under any of Plaintiffs' claims. (ECF #11.)

**C. Contested Conditional Class Certification**

Plaintiff filed her Motion for Conditional Certification, Opt-In Identification Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b) on February 6, 2020. (ECF #21 (the "Motion for Conditional Certification"); *see* ECF ##21-1 - 21-5.) Defendant filed its opposition on February 27, 2020. (ECF #22.) On April 21, 2020, the Court issued its Opinion and Order granting Plaintiff's Motion for Conditional Certification. (ECF #26; 2020 U.S. Dist. LEXIS 69772.) Notice was mailed and emailed to putative class members, and the opt-in period ended sixty (60) days after the date the Notice and Opt-In Consent Form were mailed. (*See* 2020 U.S. Dist. LEXIS 69772, at *25.) Those putative class members who opted in to Case No. 2:19-cv-03812 were joined as party Opt-In Plaintiffs.

**D. Discovery and Document Analysis**

The parties engaged in extensive discovery, and Defendant ultimately produced voluminous data and documents necessary to fully and fairly evaluate the claims of the Named Plaintiff and Opt-Ins. On April 24, 2020, Plaintiff served Plaintiff's Omnibus First Set of Discovery Requests to Defendant RMLS-HOP requesting, among other things, all records pertaining or related to employee handbooks; human resources policies, manuals, or memos; tip sheets, timesheets and other timekeeping or tip records; any review, editing, or other modification of server hours, timekeeping, or tip records; and all other records for Plaintiff and each member of the FLSA Collective relating or pertaining to the activities, duties and tasks of these workers, including, but not limited to any records generated by scheduling, tracking, logging, timing, clocking, measuring, recording, or monitoring the time each server employee spent performing non-tipped work unrelated to their tipped occupations and time each server

employee spent performing non-tipped work related to their tipped occupations.[2] Defendant

ultimately produced voluminous personnel, compensation and timekeeping data and documents

in addition to PDF versions of data compilation spreadsheets where available. Defendant

provided over 4,000 PDF records for the Named and Opt-In Plaintiffs. Plaintiffs' Counsel both

manually and electronically transcribed the wage and hour data into an electronic format.

Notably, none of the probative records were produced in Microsoft Excel or another native file

format as exported directly from the payroll system – Plaintiffs' Counsel ultimately manually

and electronically created spreadsheets from the records produced by Defendant to analyze

potential damages. The documents and data were extensively analyzed by both sides to assess

the strengths and weaknesses of the case and determine computations of the claimed damages.

The discovery and analyses were difficult and time-consuming, but proved instrumental to the

negotiation of the proposed Settlement.

## II. THE NEGOTIATIONS

As noted above, prior to engaging in settlement negotiations, Plaintiffs' Counsel

conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour

information and data and documents. Following Plaintiffs' Counsel's analysis of the data and

documents necessary to fully and fairly evaluate the claims of the Named Plaintiff and Opt-Ins,

the parties engaged in a mediation before Attorney Robert M. Kincaid, Jr. on December 4, 2020.

This mediation was unsuccessful, as the parties were at an impasse at the end of the mediation.

---

[2] Defendant also served requests for interrogatories, requests for admissions, and requests for production of documents upon Plaintiffs Shakura Slaughter, Angela Russell Jackson, Carmon Kennard, Faybeon Stewart, Irma Felicia Carey, Jennifer Cromes, Jon Trott, Misty Smitley, Wynter Palmer, Zachary Michaud, Anna Renee Rutherford, Corbin Searis, Jessica M. Graham, Karen Park, Makayla Christian, Mya Mitchell, Sharita J. Charlton, Cameron King ,Georgepaul Jones, Heather Conley, Lacey Taylor, Luke Wyandt, Thomas N. Hopkins, Latisha Raver, Jennifer Hill, Benita M. Arnold, Nigist Hailemariam, and Brittany Connor.

On December 13, 2021, Plaintiff filed her Motion for Status Conference/ Motion to Set Trial Date. (ECF #41.) On December 16, 2021, the Court issued its Order Setting Trial Date and Settlement Conference, setting a May 24, 2022 Settlement Conference before the Court, as well as a July 11, 2022 trial date. (ECF #42.)

Plaintiffs and Defendant, through counsel, continued informal but productive negotiations throughout the pendency of the matter through June, 2022. The attorneys' fees to Plaintiffs' Counsel were negotiated separately from the payments made by Defendants to Name Plaintiff and Opt-Ins. These negotiations ultimately resulted in a global settlement encompassing all issues (*see* ECF #46), subject to approval by the Court pursuant to § 216(b). The distributions and settlement as a whole, including the attorneys' fees to Plaintiffs' Counsel, are supported by the Declaration of Plaintiffs' Counsel. (*See* Ex. 4.) Formal settlement documents, including the Joint Stipulation of Settlement and Release submitted separately as Exhibit 1, were later prepared and executed for approval by the Court.

## III.     THE SETTLEMENT TERMS

If approved by the Court, the proposed Settlement will make individual settlement payments available to the Named Plaintiff and Opt-Ins representing a substantial percentage of the potential value of their claims. The proposed payments to Named Plaintiff and Opt-Ins – set forth in the Individual Payments Allocation Schedule (Ex. 3) – are based proportionally on the hours and weeks worked by Plaintiffs for Defendant as hourly server employees during which time they allege they were not paid full minimum wage for all hours worked. The settlement achieves an excellent result for the covered workers, and results in an average payout of $1,500 per worker.

6

In addition, the Named Plaintiff Shakura Slaughter will receive a service award of $2,500.00 in recognition of her service to Plaintiffs' Counsel and her contribution to achieving this Settlement. The proposed service award was well-earned. Among other things, Plaintiff Shakura Slaughter consulted with Plaintiffs' Counsel at critical stages; helped counsel review and respond to the documents provided by Defendant and prepare a demand on behalf of herself and members of the FLSA collective; and provided other important documents and information throughout the course of the litigation. Her contributions were instrumental in enabling Plaintiffs' Counsel to negotiate the proposed Settlement. Plaintiff Shakura Slaughter's efforts have resulted in a significant recovery for the other Opt-Ins.

Plaintiffs' Counsel will receive an agreed-upon amount for attorneys' fees and reimbursement of litigation costs. Importantly, the attorneys' fees to Plaintiffs' Counsel were negotiated separately from the payments made by Defendants to Named Plaintiff and Opt-Ins. As further explained in Section IV, D of this brief below, the payment to counsel represents a significant reduction from the total lodestar attorney fees expended in the prosecution of the Action. (*See* Exs. 4, 5.) The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel. (*Id.*) As provided in the Settlement Agreement, attorneys' fees and costs to Plaintiffs' Counsel may not be disbursed until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Named Plaintiff and Opt-Ins.

## IV.    THE PROPRIETY OF APPROVAL

Pursuant to the FLSA, claims for back wages and other damages may be settled or compromised only with the approval of the district court or the Secretary of Labor. *See, e.g., Lewis v. Huntington Natl. Bank,* 789 F.Supp.2d 863, 869 (S.D.Ohio 2011) (citing *Barrentine v.*

*Arkansas-Best Freight Sys.*, 450 U.S. 728, 740, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981); *Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-1353 (11th Cir. 1982)). To approve the settlement, the Court should determine that the compromise is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *Yorba v. Barrington School, LLC*, S.D.Ohio No. 2:21-cv-691, 2022 U.S. Dist. LEXIS 118230, at *7 (July 5, 2022) (citing *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008), quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute"), citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8, 90 L. Ed. 1114 (1946)); *Zego v. Meridian-Henderson*, S.D.Ohio No. 2:15-CV-3098, 2016 U.S. Dist. LEXIS 132320, at *3 (Sep. 27, 2016) (quoting *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-729, 2012 U.S. Dist. LEXIS 74994, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012).

### A.  The Seven-Factor Standard is Satisfied

In *Yorba*, this Court used seven factors to evaluate whether the proposed settlement was "fair, reasonable, and adequate" for purposes of the FLSA, 29 U.S.C. 216(b). *Yorba*, 2022 U.S. Dist. LEXIS 118230, at *7-12; *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *19-20; *see also Crawford v. Lexington-Fayette Urban Cty. Govt.*, E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13-14 (Oct. 23, 2008) (applying an alternative formulation of the seven-factors) (citing *UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007), citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992)). These factors include:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Yorba*, 2022 U.S. Dist. LEXIS 118230, at *7-12 (citing *UAW*, 497 F.3d at 631). "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Gentrup v. Renovo Servs., LLC,* S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *8 (June 24, 2011) (citing *Redington v. Goodyear Tire & Rubber Co.,* 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461 at *11 (N.D. Ohio Aug. 23, 2008), citing *Granada,* 962 F.2d at 1205-06)).

Here, a key factor – the likelihood of success on the merits balanced against the amount and form of the settlement in light of the substantial risks of litigation – strongly supports approval. Litigating FLSA claims is always risky and uncertain, and Plaintiff-servers would have to establish not only Defendant's liability, which Defendant vehemently denies, but also each Plaintiff-server's damages. Of particular contention in this specific case is the factual and legal dispute as to whether the covered servers performed non-tipped duties that exceeded twenty percent of the total time these servers worked for Defendant each workweek, as well as performed various non-tipped tasks unrelated to their tipped occupations during their shifts, which would have the effect of compromising Defendant's ability to take a tip credit.

Defendant denies all of the material claims and contentions alleged by Plaintiffs, and believes that the evidence developed to date supports its position. At trial, Plaintiffs would be required to testify – primarily on memory alone – as to the dates, amounts and times they performed non-tipped tasks related to their tipped occupations and/or performed non-tipped tasks unrelated to their tipped occupations during their shifts *on a workweek-by-workweek basis*. Defendant, on the other hand, will argue that Plaintiffs were required to confirm through the timekeeping/point-of-sale system that they worked no more than 15% of their shift performing "side work" each and every shift, as well as establish Defendant's policies that required Plaintiffs

to notify management or human resources if they ever spend more than 15% of their time performing side work during a shift. Obviously, the outcome of litigating the case through a jury trial would be uncertain, and the risks of continued litigation would be significantly greater than most straight-forward unpaid wage cases.

Defendant further asserts that the individualized analysis of the issues regarding alleged side work that would be required as to each potential collective action member would warrant decertification of this collective action as to both the Hilliard and Reynoldsburg IHOP locations. In contrast, the Settlement assures that the Plaintiffs will receive significant compensation. Given the many uncertainties surrounding trial in this matter, the certainty and finality of a settlement that will substantially benefit the Named Plaintiff and Opt-Ins is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24-25 (the public interest is served when a settlement "ends potentially long and protracted litigation") (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 369 (S.D. Ohio 2006); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to the Named Plaintiff and Opt-Ins to this action.

The other factors are satisfied as well. Plaintiffs' Counsel have extensive experience litigating FLSA claims, and there is categorically no fraud or collusion -- the settlement was achieved only after good faith and arm's-length negotiations over a many month period between parties represented by competent counsel, including an attempted but unsuccessful mediation before experienced mediator Robert M. Kincaid, Jr. *See  Sharier v. Top of the Viaduct, LLC,* N.D.Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584, at *5 (Mar. 13, 2017); *Yorba*, 2022 U.S. Dist. LEXIS 118230, at *8.

The parties engaged in substantial document review, comprehensive data analysis, and due diligence prior to arduous negotiations, and the issues were well understood. Plaintiffs' Counsel both manually and electronically transcribed thousands of wage and hour records – the necessary payroll and timekeeping information for the required damages analysis – into an electronic format to extensively assess the strengths and weaknesses of the case and determine computations of the claimed damages. The discovery and analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

Moreover, wage-and-hour cases for groups of employees are always expensive and time-consuming and the expense and likely duration of continued litigation favor approval. Given the factual and legal complexity of the issues in this case, there is no guarantee that Plaintiffs will prevail at trial and the litigation could be long and protracted. In contrast, the Settlement assures that the Plaintiffs will receive significant compensation. Counsel on both sides support the Settlement, as does the Named Plaintiff herself. (*See* Exs. 1, 4.) In sum, the seven-factor standard is satisfied, supporting that the settlement is "a fair and reasonable resolution of a bona fide dispute." *Yorba*, 2022 U.S. Dist. LEXIS 118230, at *7.

### B.  The Settlement Payments are Fair, Reasonable, and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court should "ensure that the distribution of settlement proceeds is equitable." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *25 (citing *Rotuna v. W. Customer Mgt. Group, LLC,* N.D.Ohio No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *6 (June 15, 2010), citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999)).

In the present case, the proposed individual settlement payments to the Named Plaintiff and Opt-Ins – listed in the Individual Payments Allocation Schedule (Ex. 3) – represent a

11

substantial percentage of the potential value of their claims, and the allocations are based proportionally on the hours and weeks worked by Plaintiffs for Defendant. This method of allocating the settlement proceeds in a wage-and-hour case is eminently equitable and fair, as it is based exclusively on the damages methodology that Named Plaintiff and Opt-Ins will present at trial.

The settlement achieves an excellent result for the covered workers, and results in an average payout of $1,500 per worker. The cornerstone of Plaintiffs' damages claim is that, as a result of Defendants' alleged unlawful and willful tipped employee minimum wage practices and policies – in every workweek where they performed "side work" exceeding 20% of their total hours worked, or performed non-*de minimis* work unrelated to their tipped occupations – Plaintiffs are entitled to the non-tipped employee full minimum wage for every hour of work that they performed for Defendant, or the difference between $8.10 per hour in 2016, $8.15 per hour in 2017, $8.30 per hour in 2018, and $8.55 per hour in 2019, and the tip-credited wage paid by Defendant. **Based on the educated supposition that 50% of each collective member's workweeks were compromised** – weeks where these workers performed non-tipped duties that exceeded twenty percent of their hours worked and/or performed non-*de minimis* non-tipped tasks unrelated to their tipped occupations during their shifts, and thus Defendant was not permitted to take a tip credit – **each Plaintiff (subject to a $50.00 minimum payment) will receive approximately 175% of their claimed but disputed minimum wage and overtime (as applicable) damages separate and apart from the separately calculated and negotiated attorney fees award**. (*See* Ex. 4, Decl. of Counsel at ¶ 25.) The settlement achieves an excellent result for the covered workers in light of the procedural and substantive encumbrances underscored by Defendant. *See Yorba*, 2022 U.S. Dist. LEXIS 118230, at *14 (citing *see Shane*

*Group Inc. v. Blue Cross Blue Shield of Michigan*, Case No. 19-2260, 833 Fed. Appx. 430, 2021 U.S. App. LEXIS 983, (6th Cir., Jan. 14, 2021) (holding that 32% of alleged damages was a substantial recovery for the class); citing *see also Donnell Smith, et al. v. SAC Wireless, LLC*, No. CV 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022) (approving FLSA settlement providing payments of approximately 115% of plaintiffs' possible damages and noting the amount "greatly exceeds the typical 7-11% recovery in FLSA cases.")).

As noted above, individual payments will be calculated on a proportional individual assessment of the hours and weeks worked by Plaintiffs for Defendant as hourly server employees during the applicable time period. There is no doubt that the payments to Plaintiffs are an exceptional recovery in light of the procedural and substantive encumbrances underscored by Defendant, and meet the criteria for approval pursuant to the FLSA, § 216(b), and Sixth Circuit Authority.

### C.  The Service Award to the Plaintiff is Proper and Reasonable

A reasonable service award properly recognizes the representative Plaintiff's services on behalf of other beneficiaries of the settlement and her contribution to achieving a positive outcome. *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990). This Court has noted that such awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Yorba*, 2022 U.S. Dist. LEXIS 118230, at *14 (citing *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019), quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)).

In this Circuit, reasonable service awards are

> [J]ustified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of the case, or where the named plaintiffs faced the risk of retaliation or threats as a result of their participation as class representatives.

*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997) (citations omitted). Service awards "are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Dillworth v. Case Farms Processing, Inc*., N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (Mar. 8, 2010) (approving $6,000 and $4,000 to representative Plaintiffs) (quoting *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 145 (E.D. Pa. 2000)); *see also Osman v. Grube, Inc.,* N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *5-6 (May 4, 2018) (approving $7,500 service award to named plaintiff).

Indeed, the Named Plaintiff Shakura Slaughter here incurred "substantial direct and indirect financial risks in attempting to vindicate the rights of others", and "spent a good deal of time and effort in this case." *In re Dun & Bradstreet*, 130 F.R.D. at 373-74. Plaintiff Shakura Slaughter consulted with Plaintiffs' Counsel at critical stages; helped counsel review and respond to the documents provided by Defendant and prepare a demand on behalf of herself and members of the FLSA collective; and provided and reviewed other important documents and information throughout the course of the litigation. Her contributions were instrumental in enabling Plaintiffs' Counsel to negotiate the proposed Settlement. Furthermore, Plaintiff Shakura Slaughter patiently, proactively, and faithfully represented the interests of all Opt-Ins and ably

14

assisted Plaintiffs' Counsel in this matter which spanned more than three years,[3] significantly longer than most FLSA actions. Her contributions were instrumental in achieving this Settlement on behalf of all concerned. The proposed service award of $2,500.00 is reasonable and well-earned. Defendant has no objection to this award.

### D.  Plaintiffs' Counsels' Fees and Expenses are Proper and Reasonable

The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." O.R.C. § 4111.10. The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134-35 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502-03 (6th Cir.1984)).

The Sixth Circuit has "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages." *Fegley,* 19 F.3d at 1134 (quoting *Posner v. Showroom, Inc.,* 762 F.2d 1010, 1985 U.S. App. LEXIS 14544, at *6, 1985 WL 13108, at * 2 (6th Cir.1985)). *Accord, Kritzer,* 2012 U.S. Dist. LEXIS 74994, at *27 (May 30, 2012) (the fee award must be "adequate to attract competent counsel but … not produce a windfall") (citing *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir. 2008), quoting *Blum v. Stenson,* 465 U.S. 886, 897

---

[3] 3 years, 2 months, 15 days since the date of filing (September 3, 2019) as of November 18, 2022.

15

(1984)). In the Sixth Circuit, "[i]n determining what constitutes a 'reasonable' fee award, '[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees . . . encourage[s] the vindication of congressionally identified policies and rights." *Funk v. Airstream, Inc.*, S.D.Ohio No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334, at *5 (Sep. 23, 2019) (citing *Fegley*, 19 F.3d at 1134-35 (internal quotations and citations omitted)). "There is a 'strong presumption' that a prevailing plaintiff's attorney is entitled to the lodestar fee," which is "the product of the number of hours reasonably spent on the case by an attorney times a reasonable hourly rate." *Id.* (quoting *Adcock-Ladd v. Secy. of Treasury*, 227 F.3d 343, 350 (6th Cir.2000); *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir.2004); citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).

Recently, in *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616-617 (6th Cir.2021), the Sixth Circuit addressed a situation where the district court "capped the awardable fees at some percentage of [the plaintiff's claims'] monetary value." The Court ultimately ordered attorney fees to be calculated based on the lodestar attorneys' fees incurred, noting that:

> "Neither the text nor the purpose" of the FLSA "supports imposing a proportionality limit on recoverable attorneys' fees." The very reason that the FLSA (and the civil-rights acts) mandate an award of reasonable fees to prevailing plaintiffs is that the monetary value of their claims is often too small to support the cost of litigating them. If courts in these cases capped the awardable fees at some percentage of that monetary value, therefore, many workers with valid FLSA claims—the nurse who was underpaid $1,500, the laborer underpaid $900—would be unable to "attract competent counsel" to represent them.

*Id.* at 616-617 (quoting *Fisher v. SD Protection Inc.*, 948 F.3d 593, 603 (2d Cir. 2020); *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir.2004)). Moreover, "[i]n determining fee awards, courts should not 'become green-eyeshade accountants,' but instead must content themselves with 'rough justice.'" *Monroe v. FTS USA, LLC*, 6th Cir. No. 20-6289/6347, 2021 U.S. App. LEXIS

16

33235, at *18 (Nov. 8, 2021) (quoting *Rembert*, 986 F.3d at 618, quoting *Carter v. Hickory Healthcare, Inc.*, 905 F.3d 963, 970 (6th Cir. 2018)). *See also Smyers v. Ohio Mulch Supply Inc.*, 6th Cir. Nos. 21-3008, 21-3009, 2021 U.S. App. LEXIS 19634, at *5-6 (July 1, 2021) (district court abused its discretion by reducing the parties' agreed-to fees payment calculated under the lodestar method to one-third of the total settlement amount).

Here, the proposed payment to Plaintiffs' Counsel – again, ***negotiated separately from the payments to Named Plaintiff and Opt-Ins*** – is the result of hard bargaining and represents a significant reduction from the total fees and costs expended in the prosecution of the Action. The efforts of Plaintiffs' Counsel resulted in proposed settlement payments to the Named Plaintiff and Opt-In Plaintiffs representing a substantial percentage of the potential value of their claims - approximately 175% of the wage damages calculated for the participating Named Plaintiff and Opt-In Plaintiffs based on the educated supposition that 50% of each collective member's workweeks were weeks where these workers performed non-tipped duties that exceeded twenty percent of their hours worked and/or performed non-*de minims* non-tipped tasks unrelated to their tipped occupations during their shifts, and thus Defendant was not permitted to take a tip credit. Moreover, the proposed payment to Plaintiffs' Counsel represents a significant reduction from the total fees and costs expended in the prosecution of the Action. The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel, attached as Exhibit 4, as well as records of Plaintiffs' Counsel's attorney hours as of July 25, 2022 (Ex. 5), and records of Plaintiffs' Counsel's costs (Ex. 6).

As provided in the attached time records and briefly summarized here, the activities of Plaintiffs' Counsel in this matter were significant. Prosecuting complex litigation on a collective class basis is always difficult and time-consuming. The tasks required of Plaintiffs' Counsel in

17

this case included pre-litigation investigation of Plaintiff's claims and the identities of potential corporate defendants; preparation of the Complaint and Amended Complaint; negotiation and submission of the parties' Rule 26(f) report; as well as investigation and interviewing of current and former servers of Defendant and putative opt-in class members. On October 28, 2019 Defendant Romulus Holdings LLC moved to dismiss itself as a Defendant pursuant to Fed. Rs. Civ. P. 12(b)(2), (3) and (6). (ECF #8.) Plaintiff filed a First Amended Complaint (ECF #10), and simultaneously filed a response to Defendant's motion (*see* ECF #9.) Furthermore, Plaintiff filed her contested Motion for Conditional Certification on February 6, 2020. (ECF #21; *see* ECF ##21-1 - 21-5.) Defendant filed its opposition on February 27, 2020 (ECF #22), and Plaintiff filed her reply on March 12, 2020 (ECF #25). On April 21, 2020, the Court issued its Opinion and Order granting Plaintiff's Motion for Conditional Certification (ECF #26; 2020 U.S. Dist. LEXIS 69772), and notice was subsequently mailed, emailed, and administrated by Plaintiffs' Counsel. Plaintiffs' Counsel oversaw the notice mailings to potential opt-in plaintiffs, and responded to questions and inquiries from potential opt-in members.

Plaintiffs' Counsel drafted and issued Plaintiff's Omnibus First Set of Discovery Requests to Defendant. As a result of the discovery and mediation process, Defendants provided Plaintiffs approximately 4,000 pages of PDF documents. Plaintiffs' Counsel both manually and electronically transcribed the relevant wage and hour records into an electronic format. Notably, none of the probative records were produced in Microsoft Excel or another native file format as exported directly from the payroll system – Plaintiffs' Counsel ultimately manually and electronically created spreadsheets from the records produced by Defendant to analyze potential damages. These documents and data were extensively analyzed by Plaintiffs' Counsel for damages, settlement evaluation and mediation purposes. The analyses, investigation and

discovery were time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

The resulting settlement negotiated by Plaintiffs' Counsel ensures substantial payments to the Named Plaintiff and Opt-In Plaintiffs – approximately 175% of their calculated wage damages as outlined above. As of July 25, 2022, at a combined fee lodestar of $99,835.00, the requested attorney fee results in a "negative multiplier" of 0.74 ($73,571.35 attorney fee award / $99,835.00 lodestar fee), if the Court approves the requested settlement payment as to attorneys' fees. (*See* Ex. 4 ¶¶ 46-48; Ex. 5, Plaintiffs' Counsel's Lodestar Hours Spreadsheet.) Such a negative multiplier supports that the fee sought is reasonable. *Jones v. Home Care Assistance of Cent. Ohio, LLC*, S.D.Ohio No. 2:18-cv-01342, 2019 U.S. Dist. LEXIS 213145, at *3-4 (Dec. 9, 2019); *Rikos v. P&G*, S.D.Ohio No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *26 (Apr. 30, 2018) (citing *see Walls v. JP Morgan Chase Bank, N.A.*, Case No. 3:11-cv-673-DJH, 2016 U.S. Dist. LEXIS 142325, at * 18 (W.D. Ky. Oct. 13, 2016)). In other words, while Named Plaintiff and Opt-In Plaintiffs will recover approximately 175% of their calculated wage damages, Plaintiffs' Counsel has agreed to recover a significant reduction – approximately 74% – of their lodestar attorney fees incurred as of July 25, 2022. Moreover, Plaintiff's Counsel's lodestar has not been adjusted to account for the time Plaintiff's Counsel spent after July 25, 2022 finalizing this motion for approval and final negotiations of the Settlement Agreement, as well as additional time counsel will expend fulfilling the obligations in the Settlement Agreement, monitoring the administration of the Settlement, responding to questions and inquiries from the collective action members, and continuing representation of Plaintiffs through the conclusion of this matter and disbursement of settlement proceeds. Plaintiffs' Counsel anticipates that they will have spent, after July 25, 2022, an additional 18 - 24 attorney hours through this matter's

conclusion, which will further decrease the lodestar calculation of Plaintiff's Counsel's attorney time. The lodestar calculation in this matter unequivocally supports the reasonableness of the fee request.

In addition, the Settlement provides for $1,428.65 in reimbursable out-of-pocket expenses incurred in this case by Plaintiffs' Counsel. These expenses constitute costs that were reasonably necessary to prosecute the action. (*See* Ex. 4 ¶ 49; Ex. 6.)

Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions.

## V.     CONCLUSION

For the reasons addressed above, the parties respectfully request that the Court approve the Settlement by entering the proposed order attached as Exhibit 2.

Respectfully submitted,

s/ Ryan A. Winters                                  /s David A. Selden     (via email consent)
Joseph F. Scott (0029780) (Trial Attorney)   MESSNER REEVES, LLP
Ryan A. Winters (0086917)                    7250 N. 16th Street, Ste. 410
SCOTT & WINTERS LAW FIRM, LLC                Phoenix, Arizona 85020
P: (216) 912-2221    F: (440) 846-1625       (602) 635-4003 (direct)
50 Public Square, Suite 1900                 dselden@messner.com
Cleveland, OH 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com                 Patrick Kasson (0055570) (Trial Counsel)
                                             REMINGER CO., L.P.A.
Kevin M. McDermott II (0090455)              200 Civic Center Drive, Suite 800
SCOTT & WINTERS LAW FIRM, LLC                Columbus, OH 43215
P: (216) 912-2221    F: (440) 846-1625       P: 614-228-1311
11925 Pearl Rd., Suite 310                   pkasson@reminger.com
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com               *Counsel for Defendant RMLS-HOP Ohio, L.L.C.*

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt.

*s/ Ryan A. Winters*
Ryan A. Winters (0086917)

21